SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SHANNON Z. PETERSEN, Cal. Bar No. 211426
  spetersen@sheppardmullin.com
LISA YUN PRUITT, Cal. Bar No. 280812
  lpruitt@sheppardmullin.com
SIEUN J. LEE, Cal. Bar No. 311358
  slee@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

Attorneys for Defendant
IEC CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# (SOUTHERN DIVISION – SANTA ANA)

| | |
|---|---|
| SHANA PIERRE, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>IEC CORPORATION D/B/A INTERNATIONAL EDUCATION CORPORATION, a Delaware corporation,<br><br>             Defendant. | Case No. 8:22-cv-01280-FWS-JDE<br><br>CLASS ACTION<br><br>**DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Date:    November 17, 2022<br>Time:    10:00 a.m.<br>Courtroom 10D<br><br>Assigned to The Hon. Fred W. Slaughter |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................... 1

II.   THE COURT SHOULD COMPEL ARBITRATION ...................................... 2

     A.    IEC Provided Sufficient Evidence Of Plaintiff's Consent To Arbitration ................................................................... 2

     B.    There Is A Valid Arbitration Agreement ................................................ 4

     C.    Plaintiff's Claim Is Subject To Arbitration ........................................... 7

     D.    IEC Can Compel Arbitration ......................................................... 9

III.  CONCLUSION ................................................................... 11

SMRH:4864-7398-3544.1

DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Berman v. Freedom Fin. Network, LLC*
    30 F.4th 849 (9th Cir. 2022).............................................................................6, 7

*Briggs v. PFVT Motors LLC*
    2020 WL 8613676 (D. Ariz. Sept. 9, 2020) ....................................................8, 9

*Cordas v. Uber Techs., Inc.*
    228 F. Supp. 3d 985 (N.D. Cal. 2017).................................................................5

*Dohrmann v. Intuit, Inc.*
    823 F.App'x 482 (9th Cir. 2020)..........................................................................5

*Drayton v. Toyota Motor Credit Corp.*
    686 F. App'x 757 (11th Cir. 2017).....................................................................10

*Gamble v. New England Auto Fin., Inc.*
    735 F. App'x 664 (11th Cir. 2018)...................................................................8, 9

*Grabowski v. Robinson*
    817 F.Supp.2d 1159 (S.D. Cal. 2011) .................................................................2

*Graf v. Match.com, LLC*
    2015 WL 4263957 (C.D. Cal. July 10, 2015) .....................................................5

*In re Holl*
    925 F.3d 1076 (9th Cir. 2019)..............................................................................6

*Johnson v. Westlake Portfolio Mgmt., LLC*
    2020 WL 5526386 (M.D. Fla. Sept. 15, 2020) .................................................10

*Lee v. Ticketmaster L.L.C.*
    817 F.App'x 393 (9th Cir. 2020).....................................................................5, 7

*Mims v. Glob. Credit & Collection Corp.*
    803 F.Supp.2d 1349 (S.D. Fla. 2011)..........................................................10, 11

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014)..........................................................................5, 6

-ii-

SMRH:4864-7398-3544.1

Case No. 8:22-cv-01280-FWS-JDE
DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

*Peter v. DoorDash, Inc.*
    445 F.Supp.3d 580 (N.D. Cal. 2020)....................................................................5

*Rahmany v. T-Mobile USA Inc.*
    717 F.App'x 752 (9th Cir. 2018).........................................................................11

*Revitch v. DIRECTV, LLC*
    977 F.3d 713 (9th Cir. 2020) ...........................................................................8, 9

<u>Statutes and Other Authorities</u>

9 U.S.C. § 4......................................................................................................................3

https://www.collegeallstar.com/collegefunnel/ .......................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     <u>INTRODUCTION</u>

The Court should grant Defendant IEC Corporation's ("IEC") motion to compel arbitration.  IEC has provided sufficient evidence proving, more likely than not, that Plaintiff visited the CollegeAllStar website, provided her background information, and agreed to its Terms, including its arbitration provision, by affirmatively checking a box and pressing a button to indicate her consent to the Terms.  Under controlling Ninth Circuit law, this is sufficient manifestation of assent to be bound by a contract.  Although Plaintiff seeks to dispute this by claiming "the lead was fraudulent," Opp'n at 11, 12, she nevertheless admits "the veracity of some of the information could not be determined absent consultation with Plaintiff[.]" *Id.* at 12.  Indeed, CollegeAllStar could only have obtained such personal information either directly from Plaintiff, or someone very close to Plaintiff, who acted on Plaintiff's behalf or otherwise had permission or authorization to use her information.  Nevertheless, should the Court find that there is a factual dispute as to this issue, the Court should stay the action for limited discovery and trial on the issue of arbitrability.

Next, Plaintiff's claim falls within the scope of the arbitration provision.  The arbitration provision applies to any dispute concerning the Terms, which govern an individual's use of the CollegeAllStar website, which refers prospective students to matched colleges and provides the matched colleges with the students' contact information for colleges to call students about their educational opportunities.  Plaintiff's TCPA claim is premised on calls and text messages she received from IEC about Florida Career College's ("FCC") education opportunities, as a result of her use of the website.  The arbitration provision thus covers the dispute here.  Any doubt should be resolved in favor of arbitration.

Moreover, IEC has the right to compel arbitration under the doctrine of equitable estoppel because Plaintiff's claim against IEC are intertwined the Terms containing the arbitration provision and the alleged misconduct is "interdependent"

between IEC and CollegeAllStar, which is a party to the Terms.  Indeed, Plaintiff argues throughout the opposition that the "the lead was fraudulent," which shows how the alleged misconduct of calling Plaintiff without her prior express consent is interdependent between IEC and Adwire Media, which provided the lead.

Finally, Plaintiff does not dispute, and thus concedes, that the arbitration provision is otherwise enforceable.  Plaintiff does not claim fraud, duress, or unconscionability.

In light of the strong federal policy favoring arbitration, any doubt must be resolved in favor of arbitration.  Thus, the Court should compel individual arbitration and stay this action pending arbitration.  Alternatively, the Court should stay this proceeding for limited discovery and trial on the issue of arbitrability.

## II. THE COURT SHOULD COMPEL ARBITRATION

### A. IEC Provided Sufficient Evidence Of Plaintiff's Consent To Arbitration[1]

According to Adwire Media's records, Plaintiff visited https://www.collegeallstar.com/collegefunnel/, answered a series of questions about her background, and consented to the Terms, including an arbitration provision.  *See* Olson Decl. ¶¶ 6, 10, 14, Exs. B, C; Bostwick Decl. ¶¶ 7-8, Ex. A; Bohn Decl. ¶¶ 7-9 Exs. B, C.  Plaintiff, however, denies that she visited the website and points to various allegedly incorrect information provided on the website, such as the year of her high school graduation and her current education level.  But such denial, without more, is insufficient to oppose arbitration.  *See Grabowski v. Robinson*, 817

---

[1] At the very least, Plaintiff's opposition reveals that this case cannot proceed as a class action.  IEC has established that it obtain prior express written consent and agreement to arbitrate from individuals who voluntarily provide their information on the CollegeAllStar website and are matched with FCC.  Whether the person whose information was provided on the website was the person who actually filled in the information is a clear individual issue precluding certification.  It is also an issue that would require extensive discovery and testimony from all the putative class members to determine whether they entered or did not enter their information on the CollegeAllStar website, necessitating numerous mini-trials.

SMRH:4864-7398-3544.1

F.Supp.2d 1159, 1168 (S.D. Cal. 2011) ("'it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. . . . the party opposing [arbitration] may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'") (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

Moreover, any error in the background information can only be the result of inadvertent or intentional user error.  While Plaintiff denies visiting the website and argues that IEC seeks to compel arbitration based on a "fraudulent lead," she does not dispute that her name is Shana Pierre, her cell phone number is 7864191106, her email is blessedbspp1@gmail.com, she lives in the city of Miami, she lives in the state of Florida, and etc., which Adwire Media provided.  Indeed, she herself admits, "the veracity of some of the information could not be determined absent consultation with Plaintiff[.]"  Opp'n at 12.  It is more likely than not Plaintiff visited the CollegeAllStar website and simply does not remember doing so. Alternatively, it could have been Plaintiff's child, family member, or close acquaintance acting on Plaintiff's behalf or had permission or authorization to use her information, who visited the CollegeAllStar website and consented to the Terms.

Should the Court find that there is a factual dispute as to this issue, the Court should stay the action for limited discovery and trial on the issue of arbitrability. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . .  be in issue, the court shall proceed summarily to the trial thereof.").  The only way to find out whether or not Plaintiff or anyone acting on her behalf or acting with her permission or authorization consented to the Terms that included an arbitration provision is through discovery via subpoena and/or deposition.  For example, IEC can issue a subpoena to Plaintiff's wireless provider, which may reveal information relating to whether the IP address at issue is associated with Plaintiff.  IEC can also issue a

DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

1    subpoena to Comcast Cable Communications, LLC,[2] which may reveal the account

2    holder for the IP address at issue, who may be Plaintiff or her agent.[3]

3    **B.    There Is A Valid Arbitration Agreement[4]**

4        Plaintiff argues that even if she visited the CollegeAllStar website, she did not

5    consent to the Terms, including the arbitration provision, because the CollegeAllStar

6    website did not provide reasonable notice of those terms.  Plaintiff's position,

7    however, is unsupported by the evidence and case law.

8        Initially, Plaintiff inaccurately characterizes the Terms as being contained

9    within a browsewrap agreement.[5]  Opp'n at 15.  Plaintiff, however, affirmatively

10   checked the box next to the disclosure, which was one disclosure in a single

11   paragraph, stating:

12       By checking this box, I agree to be contacted by Adwire Media, 3rd
         party partners, and the schools I'm matched to on the following pages
13       to contact me by telephone, which may include artificial or pre-
         recorded calls and/or SMS text messages, delivered via automated
14       technology to the phone number that I have provided above regarding
         educational opportunities. I understand that my consent is not required
15       to make a purchase or obtain services and that I may opt-out at any time.
         In order to proceed without providing consent, call 855-692-3947. By
16       clicking be low, I certify that I am over the age of 18 and agree to the
         website Privacy Policy, <u>Terms and Conditions</u> and <u>Privacy Policy</u>
17       <u>(CA)</u>.

18   _____

19   [2] Plaintiff claims the IP address at issue is associated with Comcast Cable
     Communications, LLC.  Opp'n at 12.

20   [3] Plaintiff's counsel claims the IP address at issue is associated with Com submitted

21   a declaration, stating how he personally looked up the IP address by using online
     search tools.  As discussed in the accompanying evidentiary objections, his use of

22   such websites is unreliable.  The only way to accurately determine information

23   relating to the IP address is by subpoenaing the wireless providers.

24   [4] IEC explained in the moving papers that the Court need not determine whether
     Florida law or California law applies, because the application of either law results in

25   the same outcome, i.e., that there is a valid arbitration agreement.  But because
     Plaintiff relies solely on California law in her opposition, IEC likewise relies on

26   California law to show that there is a valid arbitration agreement.

27   [5] Plaintiff falsely accuses IEC of revising the disclosure containing the arbitration
     provision.  Not so.  A review of Exhibit A in light of Exhibit C shows that the

28   disclosures should be in a single paragraph.  *See* Olson Decl. Exs. A, C.

1   Olson Decl. ¶ 10, Exs. A, C; Bohn Decl. ¶ 9, Exs. A, C.  Right below this disclosure
2   was a bright orange square button that stated "NEXT STEP," which Plaintiff clicked
3   to proceed.  *See* Olson Decl. ¶ 10, Exs. A; Bohn Decl. ¶ 9, Ex. A.  Because the
4   website required affirmative action on behalf of Plaintiff to provide consent by
5   checking the box next to the disclosure and clicking the "NEXT STEP" proceed, the
6   agreement cannot constitute a browsewrap agreement.  *See Nguyen v. Barnes &*
7   *Noble Inc*., 763 F.3d 1171, 1176 (9th Cir. 2014) ("'browsewrap' agreements [occur]
8   where a website's terms and conditions are generally posted on the website via a
9   hyperlink at the bottom of the screen.").

10        In any event, even if the Court were to find there were two disclosures that
11   Plaintiff had to agree to, the former disclosure would have resulted in an enforceable
12   clickwrap agreement and the latter disclosure at issue would have resulted in an
13   enforceable "sign-in wrap" agreement.  Courts have found that internet agreements
14   with click button consent, such as the latter disclosure, are sufficient to form a
15   contract.  *See*, *e.g.*, *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal.
16   July 10, 2015) (holding that plaintiff affirmatively agreed to the Terms of Use,
17   including arbitration, where plaintiff "clicked the 'Continue' or other similar button
18   on the registration page where it was explained that by clicking on that button, the
19   user was affirming that they would be bound by the Terms of Use, which were
20   always hyperlinked and available for review."); *Cordas v. Uber Techs., Inc*., 228 F.
21   Supp. 3d 985, 990 (N.D. Cal. 2017) (holding there was a valid arbitration agreement
22   where plaintiff was advised "'By creating an Uber account, you agree to the Terms
23   & Conditions and Privacy Policy.' Only by clicking 'DONE' does the user assent.");
24   *Peter v. DoorDash, Inc.*, 445 F.Supp.3d 580, 582, 586-87 (N.D. Cal. 2020)
25   (similar); *Dohrmann v. Intuit, Inc.* ,823 F.App'x 482, 484 (9th Cir. 2020) (similar);
26   *Lee v. Ticketmaster L.L.C.* 817 F.App'x 393, 394 (9th Cir. 2020) (similar); *Cordas*
27   *v. Uber Techs., Inc.*, 228 F.Supp.3d 985, 990-91 (N.D. Cal. 2017) (similar); *In re*
28   *Holl*, 925 F.3d 1076, 1081-82, 1084-85 (9th Cir. 2019) (similar).

Notably, Plaintiff relies primarily on *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) in support of her argument that the arbitration provision is unenforceable.[6]  But *Berman* is inapplicable, as it dealt with a classic browsewrap agreement, which is not at issue here.  In *Berman*, the plaintiffs visited a website operated by the defendant that contained a set of hyperlinked terms and conditions that included a mandatory arbitration provision.  *Id.* at 853.  Specifically, they saw the following text on the website: "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy."  *Id.* at 854. The underlined phrases "Terms & Conditions" and "Privacy Policy" were hyperlinks, but they appeared in the same gray font as the rest of the sentence.  *Id*. Below this text was a large green button "This is correct, Continue! >>" or "Continue," which the plaintiffs clicked.  *Id.* at 853-854.  The district court held that there was no agreement to arbitrate because "the content and design of the webpages did not conspicuously indicate to users that, by clicking on the 'continue' button, they were agreeing to Fluent's terms and conditions."  *Id.* at 854.  The Ninth Circuit affirmed.  *Id.* at 859.

The Ninth Circuit initially explained the website "did not provide reasonably conspicuous notice of the terms and conditions[.]"  *Id.* at 856.  The Court explained the disclosure at issue was "in a font so small that is barely legible to the naked eye and "the textual notice [wa]s further deemphasized by the overall design of the webpage."  *Id.* at 856-857.  The Court, however, did not end its analysis there.  It further explained "the presence of 'an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound' is critical to the enforceability of any browsewrap-type agreement."  *Id.* at 857-858 (citing *Nguyen*, 763 F.3d at 1177).  It stated, "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking

---

[6] Plaintiff relies on *Nguyen* and *Snow* for general law discussing the different types of internet contracts.  *See* Opp'n at 13-14.

Case No. 8:22-cv-01280-FWS-JDE
DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

will constitute assent to the terms and conditions of an agreement." *Id.* at 857 (citing *Specht v. Netscape Commc'ns Corp*., 306 F.3d 17, 29-30 (2d Cir. 2002)). The Court found that no enforceable agreement to arbitrate was formed as the website "did not indicate to the user what action would constitute assent to those terms and conditions." *Id.*

Here, unlike in *Berman*, the disclosure was readily apparent on the screen as it was in dark, black font color, which contrasted with light gray background and the information relating to financial aid to the left, a big chunk of which were in the same font size but in a light gray color. *See* Olson Decl., Ex. A. Moreover, unlike in *Berman*, the phrases "Terms and Conditions" and "Privacy Policy (CA)" were in light gray front, a different color from the rest of the disclosure, which was in black, making it readily apparent that these were hyperlinks.

Most importantly, the Terms did not constitute a browsewrap agreement, but a "sign-in wrap" agreement. Unlike in *Berman*, the disclosure expressly informed Plaintiff, "**By clicking below**, I certify that I am over the age of 18 and agree to the website Privacy Policy, Terms and Conditions and Privacy Policy (CA)." Olson Decl. ¶ 10, Exs. A, C (emphasis added); Bohn Decl. ¶ 9, Exs. A, C (emphasis added). Right below this text was a bright orange square button, "NEXT STEP," which made it clear that by clicking on this button below the text, Plaintiff would agree to the Terms, which include an arbitration provision. *See id.* Thus, the CollegeAllStar's website required Plaintiff to "'affirmatively acknowledge the agreement before proceeding,' and 'the website contain[ed] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound[.]'" *Lee*, 817 F.App'x at 394 (quoting *Nguyen*, 763 F.3d at 1776-77). As discussed above, courts routinely find such click button consent agreements sufficient to form a contract. Thus, Plaintiff contractually agreed to arbitration.

## C.    Plaintiff's Claim Is Subject To Arbitration

Plaintiff asserts that her claim is outside the scope of the arbitration provision

and cites a number of inapposite cases, where the contracts at issue had nothing to do with any calls or text messages from the defendants.  For example, *Gamble v. New England Auto Fin., Inc.*, 735 F. App'x 664, 666 (11th Cir. 2018) involved an auto loan agreement that required an arbitration of disputes that "arise[ ] from or relate[ ] to this Agreement or the Motor Vehicle securing this Agreement."  In other words, the plaintiff "signed an agreement whereby NEAF promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay NEAF back —with interest—by a later date." *Id.*  The court found that "NEAF's sending of the text messages do not relate to or arise from its lending money to Ms. Gamble, Ms. Gamble's repayment of that loan, or the vehicle which secured the loan." *Id.*  Similarly, *Briggs v. PFVT Motors LLC*, 2020 WL 8613676, at *1, 3 (D. Ariz. Sept. 9, 2020) involved an auto agreement that "covered the sale of a vehicle[.]"  The court found that the defendant's alleged conduct of calling the plaintiff "seven years after purchasing a vehicle from Defendant" was a "new solicitation of business" that was "unrelated to the parties' prior agreement[,]" i.e. sale of a vehicle *Id.*

Moreover, Plaintiff relies on *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) for proposition that the arbitration provision cannot be read to encompass Plaintiff's claim because it relates to calls placed by IEC, a non-signatory to the agreement.  But *Revitch* is inapplicable.  The Ninth Circuit addressed: "whether a satellite television company, which became an affiliate years after the agreement was signed, may use the wireless services agreement to compel arbitration in a suit brought against it under the Telephone Consumer Protection Act." *Id.* at 714-715.  The Court answered in the negative, explaining "when Revitch signed his wireless services agreement with AT&T Mobility so that he could obtain cell phone services, he could not reasonably have expected that he would be forced to arbitrate an unrelated dispute with DIRECTV, a satellite television provider that would not become affiliated with AT&T until years later." *Id.* at 718.

DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Here, Plaintiff's TCPA claim falls within the scope of the arbitration provision. The arbitration provision requires arbitration of any "dispute [that] arise **concerning** this Agreement, the terms and conditions of this Agreement or the breach of same by any party hereto[.]" Olson Decl. ¶ 15, Ex. D (emphasis added); Bohn Decl., Ex. D (emphasis added). Plaintiff does not dispute that the term "concerning" indicates how broadly the arbitration provision should be interpreted. The arbitration provision indicates that any disputes *concerning* the Terms, which govern the prospective student's use of the website and CollegeAllStar's services provided on its website, must be arbitrated. *See* Olson Decl., Ex. D; Bohn Decl., Ex. D. The whole purpose of the CollegeAllStar website is to refer prospective students to matched colleges. *See id*. It accomplishes this by presenting the students with links to educational institutions and providing the students' contact information to the matched colleges, for the colleges to call the students about their educational opportunities. *See* Olson Decl. ¶ 3, Exs. A, C; Bohn Decl ¶¶ 3-4, Exs. A, C. FCC was one of the participating colleges on the CollegeAllStar website, and CollegeAllStar matched Plaintiff with FCC. Bohn Decl. ¶ 4; Olson Decl. ¶ 4. Unlike the auto agreements at issue in *Gamble* and *Briggs* and the situation in *Revitch*, the Terms necessarily concern and implicate calls or text messages from matched colleges, such as FCC, who are not signatories to the arbitration provision. Thus, Plaintiff's claim falls within the scope of the arbitration provision as it concerns or at least touches upon the Terms.

## D.     IEC Can Compel Arbitration

Pursuant to the doctrine of equitable estoppel, IEC has a right to compel arbitration even though it was not a signatory to the arbitration provision for two independent reasons. Initially, Plaintiff's claim under the TCPA is intertwined with or arises from her contract with CollegeAllStar. Plaintiff, however, argues otherwise and relies on cases that are distinguishable as they involved a situation where a signatory sought to invoke the arbitration provision against a non-signatory

1   or involved contracts that had nothing to do with calls or text messages.  *See*, *e.g.*
2   *Johnson v. Westlake Portfolio Mgmt., LLC*, 2020 WL 5526386, at \*2 (M.D. Fla.
3   Sept. 15, 2020) (holding that the signatory defendant to the retail installment sale
4   contract ("RISC"), which contained an arbitration provision, could not invoke the
5   arbitration provision against non-signatory plaintiff as to her claims that were not
6   based on or related to the RISC); *Drayton v. Toyota Motor Credit Corp.*, 686 F.
7   App'x 757, 758-59 (11th Cir. 2017) (holding that Toyota, a non-signatory to the two
8   agreements that plaintiffs executed as part of their purchase of a Lexus automobile:
9   "a Retail Buyer's Order (RBO) to order the car, [which contained the arbitration
10  agreement] and a [RISC], to finance the purchase of the car through a loan[,]" could
11  not invoke the arbitration agreement against plaintiff's claims based on receipt of
12  "automated telephone calls from Toyota attempting to collect a consumer debt);
13  *Mims v. Glob. Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1358 (S.D. Fla.
14  2011) (holding that Global, a non-signatory to the card agreement between plaintiff
15  and Capital One could not invoke the arbitration provision against plaintiff's TCPA
16  and FDCPA claims for "leaving messages without identifying itself and without
17  indicating the calls were being made in an effort to collect a debt.").

18        Unlike in *Drayton*, *Mims*, and *Johnson*, Plaintiff's claim against IEC is
19  intertwined with her agreement with Adwire Media.  As discussed in its moving
20  papers and above, the CollegeAllStar website refers prospective students to matched
21  colleges.  In doing so, the students expressly agree to receive calls from matched
22  colleges, and Adwire Media provides the students' contact information to matched
23  colleges for those colleges to call the students about educational opportunities.  *See*
24  Section III.D.  CollegeAllStar's Terms regulate the use of its website and its
25  services provided on the website.  *Id.*  Plaintiff's primary claim in this dispute is that
26  IEC called Plaintiff on her cell phone without her prior express consent in violation
27  of the TCPA.  IEC obtained its consent to call Plaintiff through the CollegeAllStar
28  website, which obtained consent from Plaintiff when she accessed its website.

Case 8:22-cv-01280-FWS-JDE   Document 24   Filed 11/03/22   Page 15 of 16   Page ID #:244

Because the interaction between Adwire Media and Plaintiff is governed by the Terms, and IEC gained consent to contact Plaintiff through CollegeAllStar, Plaintiff's claim is intertwined with her agreement with Adwire Media.

Next, Plaintiff's TCPA claim is premised on IEC's conduct, which is necessarily intertwined with and interdependent with Adwire Media's conduct. Plaintiff argues otherwise and again cites inapplicable cases, which involved contracts that had nothing to do with calls or text messages.  *See Rahmany v. T-Mobile USA Inc.*, 717 F.App'x 752, 753 (9th Cir. 2018) (holding that Subway, a non-signatory to the wireless agreement between plaintiff and T-Mobile could not compel arbitration against plaintiff's TCPA claim for sending text messages about its sandwich deal); *Mims*, 803 F.Supp.2d at 1358 (discussed in above paragraph).

Unlike in *Rahmany* and *Mims*, Adwire Media is responsible for obtaining TCPA-compliant consent from the prospective students it refers to IEC.  IEC's sole basis for obtaining Plaintiff's consent was through the CollegeAllStar website. Notably, Plaintiff disputes that she ever visited the website and claims throughout her opposition that "the lead was fraudulent."  Opp'n at 11-12, *see id.* at 5, 7.  This further shows how the alleged misconduct of calling Plaintiff without her prior express consent is interdependent between Adwire Media and IEC.  Indeed, any liability in this litigation depends on the interaction between Plaintiff and the CollegeAllStar website.

For either reason, the doctrine of equitable estoppel applies and the Court should compel arbitration in this case.

## III.   <u>CONCLUSION</u>

For these reasons, the Court should grant this motion, compel individual arbitration, and stay this action against IEC pending arbitration.  Alternatively, IEC requests that the Court stay this proceeding for limited discovery into and trial on the issue of arbitrability.

-11-

SMRH:4864-7398-3544.1

Case No. 8:22-cv-01280-FWS-JDE
DEFENDANT IEC CORPORATION'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

1 | Dated:  November 3, 2022

2

3 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5 | By    _____/s/ Shannon Z. Petersen_____

6 | SHANNON Z. PETERSEN
LISA YUN PRUITT
SIEUN J. LEE

7

8 | Attorneys for Defendant
IEC CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-